St. John *v.* Kepler et al., Appellants.

Argued September 28, 1948. Before MAXEY, C. J.,
DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

James W. Mack, Jr., with him James W. Mack and James L. Jack, for appellants.

Walter E. Glass, with him Earl R. Handler, Robert S. Glass and Glass & Glass, for appellee.

OPINION BY MR. JUSTICE JONES, November 9, 1948:

The plaintiff is the widow of Thomas W. St. John who was fatally injured in a highway accident caused, as the plaintiff alleges, by the negligence of the driver of a tractor-trailer of the defendant corporation which is engaged in the transportation of freight for hire by motor vehicle. C. A. Kepler, the co-defendant, is an officer of the corporation. The defendants appeal from a judgment entered against them jointly on a jury's verdict in favor of the plaintiff for damages for the wrongful death of her husband. In general, the matters assigned for error are the lower court's refusal of the defendants' motions for judgment n. o. v. and for a new trial. The amount of the verdict is not questioned.

At the time of the accident, the decedent was riding as a passenger on the front seat of a Ford sedan owned and operated by one Norman Ganoe who, however, was not brought upon the record as an additional defendant. The motor truck involved in the accident was the property of the defendant corporation whose employee, Noah H. Gilson, was the driver.

The defendants' twelve assignments of error may be taken as raising, together, three legal questions, viz.— (1) Was the plaintiff's decedent guilty of contributory negligence as a matter of law? (2) Was Ganoe, the driver of the sedan, guilty of negligence which, as a matter of law, was the proximate cause of the decedent's injuries? (3) Did the trial court err in refusing to submit to the jury the question as to whether Ganoe's alleged negligence was in fact the proximate cause of the accident? While the defendants' contentions tacitly concede the negligence of the driver of the tractor, it is necessary first to understand the character of his negligence in order that its relation to the alleged negligence of Ganoe, if any, may be properly appraised.

In viewing the evidence and inferences therefrom in the light most favorable to the verdict, as we are required to do at this stage of the proceeding, we not only consider the testimony adduced by the side obtaining the verdict but by the other side as well: *Holland v. Kohn*, 155 Pa. Superior Ct. 95, 97, 38 A. 2d 500; see also *Rossheim v. Bornot, Inc.*, 310 Pa. 154, 156, 165 A. 27.

About seven o'clock in the evening of January 3, 1942, while the plaintiff and her husband were proceeding by car from Indiana to Cresson on State Highway Route 422, they came upon an automobile accident and stopped to render aid. In that accident, two men had been injured and were in need of hospitalization. The decedent, whose automobile (a coupe) was too small for the necessary transportation, requested Ganoe, who also had stopped at the scene of the accident, to drive the men to the hospital in Indiana in his sedan, St. John offering to accompany Ganoe. Ganoe assenting, they placed the injured men on the back seat of his automobile; and, with Ganoe in the driver's seat and St. John beside him, they started for the hospital. The highway was slippery from snow and ice and, at the time, snow, driven by gusty winds, was falling in such quantity as to reduce visibility to a varying range of

approximately "three or four car lengths". In order to obtain the best possible vision, Ganoe and the decedent were sitting forward on the front seat with their heads close to the windshield. From the slight conversation carried on between them, it appears, that each of them was aware of the bad driving conditions. Ganoe kept his car to the right-hand side of the road. His headlights and two fog lights were burning; his two windshield wipers and a defroster were running; and he was proceeding at a speed of about twenty miles an hour. As he neared the foot of a long descent on Nolo Hill, about nine miles east of Indiana, he rounded a curve to his left and suddenly saw ahead of him the defendant's tractor-trailer with the tractor partially on his side of the road. Before he was able to bring his car to a stop, its left front collided with the left front of the protruding tractor, causing injuries to St. John from which he died two days later without having regained consciousness.

Shortly before the accident, the defendants' truck, which had proceeded eastward from Indiana, had started the climb up Nolo Hill. The truck was without chains and the icy condition of the highway caused it to lose traction. As a result, the driver halted the truck in a stationary position on the highway where it was for about five minutes continuously prior to the accident. The trailer portion of the combination was straight on the road to the right-hand side thereof; the tractor was angled to the left, jutting out into the highway so as to make passage by traffic coming in the opposite direction difficult. The tractor's headlights were not on, the only light visible being the dim amber "riding lights" on the top front of the tractor. No warning lights or flares had been placed on the highway ahead of, behind or to the side of the truck. After stopping on the hill, the first thing the driver of the tractor did was to procure a stone which he placed under a rear wheel of the trailer. In cross-examination, he conceded

that he could have placed warning flares on the highway in less than five minutes.

The evidence made out a prima facie case of negligence on the part of the defendants. From the testimony the jury could properly find that the driver of the tractor-trailer had sufficient time between the halting of his vehicle on the highway and the accident for him to have placed the warning flares on the highway as required by The Vehicle Code of 1929, as amended, and that such failure was causative negligence responsible for the injuries to St. John. Under the section of The Vehicle Code to which the operation of the tractor-trailer was subject (its gross weight was 38,000 pounds), it was the duty of the driver, when the vehicle became disabled, to cause "flares, lanterns, flashing signals, or other signals to be lighted and placed upon the highway: One (1) at a distance of approximately one hundred (100) feet in advance of such vehicle, one (1) at a distance of approximately one hundred (100) feet to the rear of the vehicle, and the third upon the highway side of the vehicle . . .": see Act of May 1, 1929, P. L. 905, as amended, 75 PS § 432. As was said in *Simrell v. Eschenbach,* 303 Pa. 156, 159, 154 A. 369, "Permitting the truck to stand unprotected by lights or otherwise on the pavement of this busy highway fully justified the verdicts in favor of plaintiffs so far as related to the negligence of the defendant." See also, *Baran v. Kalczynski,* 330 Pa. 52, 54, 198 A. 40; *Gaber v. Weinberg,* 324 Pa. 385, 389, 188 A. 187; and *Cormican v. Menke,* 306 Pa. 156, 161, 159 A. 36.

Under the facts consonant with the verdict, as we have related them, it is clear that the question of the decedent's possible contributory negligence was a matter for the jury to determine. In support of their contention in this connection the appellants cite *Minnich v. Easton Transit Co.,* 267 Pa. 200, 204, 110 A. 273, and quote therefrom to the effect that "When dangers, which are either reasonably manifest or known to an invited

guest, confront the driver of a vehicle, and the guest has an adequate and proper opportunity to control or influence the situation for safety, if he sits by without warning or protest and permits himself to be driven carelessly to his injury, this is negligence which will bar recovery." There, the appellants conclude the quotation and so omit the presently more pertinent continuation which is as follows: ". . . but the extent to which one, in the position of a guest, should appreciate an impending peril, and act in relation thereto, depends upon the facts peculiar to each case; unless these are manifest and the inferences to be drawn therefrom clear beyond peradventure, the issues involved must be submitted to the jury for determination. Moreover, the authorities recognize the fact that, in measuring the adequacy of the opportunity for control, there are occasions when any pronounced effort in that direction might do more harm than good." In *Cormican v. Menke,* supra, Mr. Justice DREW said (p. 164) that "The extent to which one riding as an invited guest in an automobile should anticipate an impending peril and act in relation thereto depends upon the facts of each case . . . and is ordinarily a question for the jury." It was certainly not more than a jury question in the instant case, especially, when you take into consideration the circumstances in which Ganoe and the decedent were functioning at the time.

The appellants' remaining contentions can be disposed of together as they contain a common fallacy, viz., an assumption that any negligence on Ganoe's part was, either in law or in fact, a superseding, and therefore proximate, cause of the decedent's injuries. Assuming, *arguendo,* that Ganoe failed to exercise reasonable care in the circumstances, any such negligence was no more than concurrent with the defendants' own negligence which persisted throughout as an operative factor in the accident. In other words, with Ganoe's negligence presently assumed, the collision was at most the direct

result of that negligence and the negligence of the defendant's driver. There is nothing in the evidence to suggest that there would have been any accident had it not been for the defendants' continuing negligence which first put the decedent in peril and which existed when the negligence on Ganoe's part turned the peril into actual injury. In such circumstances, "the negligences are concurrent and both defendants are jointly and severally liable for the injuries thereby occasioned": *Hughes v. Pittsburgh Transportation Co.*, 300 Pa. 55, 60, 150 A. 153; cf. *O'Malley v. Philadelphia Rapid Transit Company*, 248 Pa. 292, 295, 93 A. 1014; see also Restatement, Torts, § 447 (c).

There was no occasion for submitting to the jury, as a separate and special issue, the question of Ganoe's negligence as a superseding cause of the accident. And, if his was the actionable fault, that fact would have been reflected in an exculpation of the defendants by the jury's verdict. Consequently, they were not harmed by the court's refusal to charge as requested: cf. *O'Malley v. Philadelphia Rapid Transit Company*, supra, at p. 298.

Judgment affirmed.